# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELUX CAB, LLC d/b/a NATHAN CAB, SDC DELUX CAB, and LUX CAB, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., UBER USA, LLC, RASIER, LLC, and RASIER-CA, LLC,<br><br>Defendant. | Case No.: 16cv3057-CAB-JMA<br><br>**ORDER REGARDING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE [Doc. No. 12]** |

On January 27, 2017, Defendants UBER TECHNOLOGIES, INC., UBER USA, LLC, RASIER LLC, and RASIER-CA, LLC ("Defendants") filed a motion to dismiss and motion to strike class averments. [Doc. No. 12.] On March 3, 2017, Plaintiff DELUX CAB LLC d/b/a/ NATHAN CAB, SDC DELUX CHAM and LUX CAB ("Plaintiff") filed an opposition to the motion. [Doc. No. 15.] On March 17, 2017, Defendants filed a reply to the opposition. [Doc. No. 16.] On March 31, 2017, Defendants filed a Notice of Supplemental Authority. [Doc. No. 19.] On April 6, 2017,

Plaintiff filed a response to Defendants' notice of supplemental authority. [Doc. No. 20.] For the reasons set forth below, the motion is granted in part and denied in part.

## ALLEGATIONS OF COMPLAINT

Plaintiff Delux Cab is an independent California entity operating seven taxicabs in San Diego, California. [Doc. No. 1 ("Compl") ¶1.] Uber is a transportation network company ("TNC") that competes with taxicab services such as Delux Cab. Specifically, the Company develops, markets, and operates an online-enabled smartphone application and platform (the "Uber App") that connects passengers with drivers who provide transportation services in their personal vehicles. Compl. ¶2.

The Complaint alleges that for years, Uber has engaged in a campaign premised on false or misleading representations that were intended to and did persuade customers to use Uber rather than taxicabs. Specifically, Uber repeatedly touted false and misleading advertisements regarding the purported exceptional safety of Uber, while at the same time falsely disparaging the safety of taxicab rides offered by taxicab companies such as Delux Cab. Compl. ¶3.

Plaintiff alleges a single cause of action for violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), on behalf of itself and an alleged class of San Diego taxi operators and owners. Compl. ¶¶ 16, 48-55. Plaintiff alleges that Uber has made false statements relating to the safety of its services. Plaintiff further alleges that these statements falsely suggest that a ride requested using the Uber App is safer than the rides offered by Plaintiff and other operators of taxicabs in San Diego. Compl. ¶¶ 3-5, 30, 37-46, 50. As a result, Plaintiff's "customers were induced to choose Uber's products and services over the products and services of the taxicab industry, including Plaintiff and the Class." Compl. ¶ 54.

Plaintiff challenges the following statements made by Defendants:

31. For several years and continuing through at least May 2016, Uber's prominent "Safety" webpage on the Company's website represented, under the tagline "SAFEST RIDES ON THE ROAD – Going the Distance to Put People First," that "[w]herever you are around the world, Uber is committed

to connecting you to the safest ride on the road." The website also boasted that Uber sets "the strictest safety standards possible," and further explained that:

> The specifics vary depending on what local governments allow, but within each city we operate, we aim to go above and beyond local requirements to ensure your comfort and security – what we're doing in the US is an example of our standards around the world.

32. Uber also repeatedly boasted to the media about the supposed superior safety of Uber rides and background checks. For example, on April 24, 2014, Lane Kasselman ("Kasselman"), Uber's Head of Communications, bragged to NBC that: "We're confident that every ride on the Uber is safer than a taxi."

33. Similarly, Uber's Senior Communications Associate, Central North America, Lauren Altmin, issued a statement to NBC which stated, in part, as follows:
> What I can tell you is that Uber takes passenger safety very seriously.
> We work every day to connect riders with the safest rides on the road and go above and beyond local requirements in every city we operate.
>
> Uber only partners with drivers who pass an industry-leading screening that includes a criminal background check at the county, federal, and multistate level going back as far as the law allows. We also conduct ongoing reviews of drivers' motor vehicle records during their time as an Uber partner.... For more information on what makes Uber the safest rides on the road, please see our website....

34. Uber's supposed "industry-leading" background checks and superiority with respect to safety were again touted in an April 29, 2014 Mashable article entitled, "Faulty Background Checks May Put UberX Passengers at Risk, Report Says." Specifically, Uber's Head of Communications, Kasselman, stated:

> Uber's industry-leading background checks help connect consumers with the safest ride on the road…. Our driver-partner

3

> background checks are more thorough than those of taxis in most cities and include county, state and federal screens going back seven years. We continue to improve and are always working hard to tighten our policies and processes to ensure that Uber remains the safest transportation option available.

35. The Company's false representations continued for years. For example, on April 25, 2014, Kasselman made the following representations in a blog post:

> All Uber ridesharing and livery partners must go through a rigorous background check. The three-step screening we've developed across the United States, which includes county, federal and multi-state checks, has set a new standard.... We apply this comprehensive and new industry standard consistently across all Uber products, including UberX.
>
> Screening for safe drivers is just the beginning of our safety efforts. Our process includes prospective and regular checks of drivers' motor vehicle records to ensure ongoing safe driving. Unlike the taxi industry, our background checking process and standards are consistent across the United States and often more rigorous than what is required to become a taxi driver.

36. In order to reinforce the Company's false superior safety proclamations, from about April 2014 through about March 2016, Uber charged consumers using its UberX service option, the most popular and economical option, a $1 "Safe Rides Fee." After an UberX ride was completed, the "Safe Rides Fee" was separately itemized on an electronic receipt sent to the consumer via Uber's smartphone application and via e-mail. Next to the words "Safe Rides Fee" on the receipt was a hyperlink prompting customers to learn about Uber's justification for the additional $1 "Safe Rides Fee." According to the hyperlink, the "Safe Rides Fee" was used to support, among other things, Uber's "continued efforts to ensure the safest possible platform for Uber riders and drivers, including an industry-leading background check process, regular motor vehicle checks, driver safety education, development of safety features in the app, and insurance."

[Doc. No. 1 at 9 – 11.]

/ / / / /

/ / / / /

4

16cv3057-CAB-JMA

# DISCUSSION

Defendants bring this motion to dismiss Plaintiff's Lanham Act claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Specifically, Defendants argue the alleged misrepresentations are non-actionable for the following reasons:

(1) They are classic non-actionable puffery;

(2) They are statements of aspiration and optimism;

(3) Plaintiff improperly omits the statements' context;

(4) Some of the challenged statements are protected speech or fail to qualify as "commercial advertising";

(5) Plaintiff fails to adequately allege that its damage was proximately caused by these nine "safety" statements;

(6) Class treatment is improper because: (a) the challenged statements ended no later than May 2016 and hence there is no Article III standing to support injunctive relief; (b) the class definition is overly broad. [Doc. No. 12-1 at 11-12.]

In the alternative, Defendant's move to strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f). [*Id.* at 12.]

A.   Legal Standard.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Fed R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations in the complaint

as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN, 393 F.3d 1068, 1072* (9th Cir.2005).[1]

B.  Analysis.

To state a claim for false advertising under the Lanham Act, Plaintiffs must allege:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
(3) the deception is material, in that it is likely to influence the purchasing decision;
(4) the defendant caused its false statement to enter interstate commerce; and
(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir.2012).

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997).

Several federal district courts have ruled on similar claims against these defendants based upon the same or similar statements, including the following: *L.A. Taxi Cooperative v. Uber Technologies, Inc.* ("*L.A. Taxi*"), 114 F.Supp.3d 852 (N.D. Cal. 2015); *XYZ Two Way Radio Service, Inc. v. Uber Technologies, Inc.,* ("*XYZ Two Way Radio*") No. 15cv2015 FB CLP, 2016 WL 5854224 (E.D.N.Y. Sept. 30, 2016); and *Miadeco Corp. v. Uber Technologies, Inc.,* No. 15-20356-CIV-MARTINEZ-GOODMAN (S.D. Fla. Mar. 30, 2017)("*Miadeco*"). This Court finds the opinion of

---

[1] Defendants' Request for Judicial Notice [Doc. No. 12-3] is denied, as none of the materials are referenced in the Complaint and therefore are not properly considered in a motion to dismiss. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). The Court will, however, consider Defendants' Exhibits A – E [Doc. No. 12-4 at 8 – 33], as those articles are incorporated by reference in the Complaint. *See Knieval*, 393 F.3d at 1072.

District Judge Jon S. Tigar in *L.A. Taxi* to be the most persuasive and, to a large extent, adopts his reasoning as set forth below.

    (1) Puffery.

  Defendants argue that all of the challenged statements are non-actionable puffery and that the complaint should therefore be dismissed in its entirety. [Doc. No. 12-1 at 16 – 25.] *See Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir.2008) ("the determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion."). In the Ninth Circuit:

> A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. The common theme that seems to run through cases concerning puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. Thus, a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.

*Newcal Indus.*, 513 F.3d at 1053 (internal citations and quotation marks omitted). "Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms*, 108 F.3d at 1145 (internal quotation marks omitted).

  As noted by Judge Tigar, many of the alleged statements do include "specific" assertions that seem to describe "absolute characteristics" of Uber's services that could be tested. *L.A. Taxi*, 114 F.Supp.3d at 861, citing *Newcal Indus.*, 513 F.3d at 1053. For example, Uber claims that it is "setting the strictest safety standards possible," that its safety is "already best in class," and that its "three-step screening" background check procedure, which includes "county, federal and multi-state checks," adheres to a "comprehensive and new industry standard." Compl. ¶¶ 3, 31 35. Uber has historically described its background check procedures as "industry-leading." *Id*. ¶¶ 33-34. Uber's statements also explicitly compare the safety of its services with those offered by taxi cab

companies. For example, a statement on Uber's blog describing its "rigorous" background check procedures reads, "[u]nlike the taxi industry, our background checking process and standards are consistent across the United States and often more rigorous than what is required to become a taxi driver." *Id*. ¶ 35.

As further noted by Judge Tigar, a reasonable consumer reading these statements in the context of Uber's advertising campaign could conclude that an Uber ride is objectively and measurably safer than a ride provided by a taxi or other competitor service, i.e., it is statistically most likely to keep riders from harm. *L.A. Taxi*, 114 F.Supp.3d at 861. References to the "strictest safety standards" and explicit comparisons with competitor taxi services reinforce the impression that Uber's statements are grounded in fact. *Id.* At this stage in the litigation, the Court cannot conclude that the challenged statements, considered together, are all "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms,* 108 F.3d at 1145. Therefore, the motion to dismiss based on puffery is denied.

(2) Aspirational statements.

Second, Defendants argue that certain advertising statements they describe as "aspirational" are non-actionable puffery because there is no way to quantify or prove false "generalized statements of aspiration and optimism." [Doc. No. 12-1 at 21 – 22.] According to Uber, statements such as, "We are committed to improving the already best in class safety and accountability of the Uber platform, for both riders and drivers," Compl. ¶ 45, are non-actionable because any claims about safety are couched in aspirational language that makes Uber's claims too vague and subjective to support Plaintiffs' false advertising claims.

To the extent Uber contends that the Court should delineate a category of "aspirational statements" that are immune from liability under the false advertising laws, Judge Tigar correctly rejected that argument. *See L.A. Taxi*, 114 F.Supp. 3d at 862. It is true that statements "generally describing the 'high priority' " a company places on certain efforts may constitute puffery. *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d

8

16cv3057-CAB-JMA

367, 379 (9th Cir.2003). But Defendants cite no authority in support of the proposition that the simple addition of phrases such as "Uber is committed to ...," "Uber works hard to ...," or "We're doing everything we can to ..." to an advertising statement automatically shields a defendant from liability. Compl. ¶¶ 31, 34, 36. Where a challenged statement includes "aspirational" language, a court must still determine whether it "is extremely unlikely to induce consumer reliance." *Newcal Indus.,* 513 F.3d at 1053.

Here, just as in *L.A. Taxi*, the challenged statements do not merely assert that Uber places a high priority on safety. 114 F.Supp.3d at 863. They also incorporate assertions that a reasonable consumer might rely on as based in fact. For example, Uber claims that it makes "continued efforts to ensure the safest possible platform for Uber riders and drivers, including an industry-leading background check process." Compl. ¶ 36. This statement makes claims concerning both Uber's commitment to safety and the objective safety and accountability of its platform. And while Uber's claims concerning its corporate commitment may not be measurable and may therefore be dismissed by readers as puffery, a reasonable consumer could conclude that Uber's "best in class safety" is an objective fact. *See L.A. Taxi*, 114 F. Supp. 3d at 863. The statements classified by Defendants as "aspirational" include plausibly measurable factual claims. *Id.* Therefore, Defendants' motion to dismiss on this ground is denied.

    (3) Context.

Defendants also contend that the complaint should be dismissed because it impermissibly and misleadingly takes statements out of context. [Doc. No. 12-1 at 25 - 27.] More specifically, they argue that Plaintiff has focused on general, subjective statements amounting to puffery, while ignoring specific, factual statements relating to safety, the truth of which it does not dispute. For example, Plaintiff does not dispute that Uber screens criminal records going back seven years and conducts county, federal, and multi-state checks. [Doc. No. 12-1 at 4, Compl. ¶34.]

This Court agrees with Judge Tigar that this argument is not persuasive because the statements concerning safety that are challenged in Plaintiffs' complaint are actionable.

9

*L.A. Taxi,* 114 F.Supp.3d at 863. As explained above, a reasonable consumer might conclude that Uber's claims that its rides are safest, its standards are strictest, and its background check procedures are more rigorous than competitors' are based in objectively measurable fact, and might reasonably rely upon them in deciding whether or not to use Uber. *Id.* Plaintiff alleges that these factual claims are false, in part because a background check that screens records going back seven years and involves county, federal, and multi-state checks is not an "industry-leading" background check. See Compl. ¶¶ 5, 42, 45. Plaintiff need not allege that every factual statement in Defendants' advertising materials is false in order to state a false advertising claim. *See L.A. Taxi*, 114 F. Supp. 3d at 863. Therefore, Defendants' motion to dismiss on this ground is denied.

(4) Protected speech/not commercial adverstising.

To constitute commercial advertising or promotion under the Lanham Act, a representation must be:

> 1) commercial speech; 2) by a defendant who is in commercial competition with plaintiff; 3) for the purpose of influencing customers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations 4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion within that industry.

*Rice v. Fox Broad. Co.,* 330 F.3d 1170, 1181 (9th Cir.2003)(citations omitted).

Here, Defendants argue that several of the challenged statements are not actionable because they are not commercial advertising. [Doc. No. 12-1 at 27 – 31.]

a) Media Statements.

Defendants argue that a significant number of the statements Plaintiff attacks were statements made by Uber representatives to the media and, therefore, are protected under the First Amendment. [Doc. No. 12-1 at 27 – 29.] " '[T]he core notion of commercial speech' is that it 'does no more than propose a commercial transaction.' " *Hoffman v. Capital Cities/ABC, Inc*., 255 F.3d 1180, 1184 (9th Cir.2001) (quoting *Bolger v. Youngs*

10

16cv3057-CAB-JMA

*Drug Prods. Corp.*, 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983)). Statements made to the media and published in a journalist's news article concerning a matter of public importance are not commercial speech, and are protected under the First Amendment. *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir.2003); *see also id.* ("we have been careful not to permit overextension of the Lanham Act to intrude on First Amendment values"); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir.2002) ("If speech is not 'purely commercial'—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection.").

Here, just as in *L.A. Taxi,* several of the challenged statements were made by Uber representatives to journalists and published in independent online articles. Compl. ¶¶ 32 - 34; Declaration of William L. Stern in Support of Defendants' Motion to Dismiss [Doc. No. 12-4, ¶¶ 6–8, Ex. C ("Local 4 Defenders: Is Uber X safe?"), Ex D. ("Faulty Background Checks May Put UberX Passengers at Risk, Report Says"); Ex. E ("Is Uber Keeping Riders Safe?"). Each article discusses whether using Uber is safe, and each includes responsive statements from an Uber representative. Because the challenged statements are "inextricably intertwined" with the reporters' coverage of a matter of public concern, i.e. whether Uber is safe for riders, they cannot constitute commercial speech actionable under the Lanham Act. *See L.A. Taxi,* 114 F.Supp.3d at 864, citing *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F.Supp.2d 802, 818 (C.D.Cal. 2010), *Nat'l Servs. Grp. Inc. v. Painting and Decorating Contractors of Am., Inc.,* No. 06–563–CJC (ANX), 2006 WL 2035465, at *5 (C.D.Cal. July 18, 2006) ("Where particular speech includes commercially-motivated statements that are inextricably intertwined with otherwise fully protected speech, the entirety of the speech may be fully protected" (internal quotation marks omitted)).

Plaintiff does not oppose Defendants' argument regarding the media statements except to say, in a footnote, that the Court should not consider any arguments that apply to fewer than all of the challenged statements. [Doc. No. 15 at 25, n. 22.] However, as noted by Judge Tigar, Defendants' statements to the media comprise a clearly defined

catergory. Therefore, Defendants' motion to dismiss as to the media statements is granted.

### b) Receipts for "Safe Rides Fee."

Defendants also contend that statements made about Uber's "Safe Rides Fee" on users' emailed receipts are not commercial speech because they are made after a user completes a ride. [Doc. No. 12-1 at 29 – 31.] Therefore, Uber argues, they relate to a transaction that has already occurred, rather than proposing a transaction or influencing consumers to purchase Uber's services in the future. *See L.A. Taxi,* 114 F.Supp.3d at 865, citing *Rice*, 330 F.3d at 1181 (a commercial advertising statement must be made "for the purpose of influencing consumers to buy defendant's goods or services"), *Gonzalez v. Allstate Ins. Co.*, No. 04–cv–1548–FMC (PJWx), 2005 WL 5891935, at *8 (C.D.Cal. Aug. 2, 2005) (notices relating to commercial transactions that have already occurred and that require no action by the customer are not commercial speech).

Plaintiff responds that because Uber relies on passengers repeatedly using its services, and because users receive a receipt including a link to the "Safe Rides Fee" information each time they complete an Uber ride, it is plausible that passengers who use Uber and read the information about the "Safe Rides Fee" are influenced to use the service again. [Doc. No. 15 at 24.] The Complaint alleges that statements like "This Safe Rides Fee supports continued efforts to ensure the safest possible platform for Uber riders and drivers," bolster consumers' expectations that Uber provides the safest ride possible, and that users "will be receiving a ride safer than that provided by Plaintiffs' taxi cabs." Compl. ¶¶ 3, 32, 36, 46.

As noted by Judge Tigar, read in the light most favorable to the Plaintiffs, the Complaint adequately alleges that the statements relating to the "Safe Rides Fee" are made for the purpose of influencing consumers to use Uber's services again. *L.A. Taxi,* 114 F.Supp.3d at 865, citing *See Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. 14–cv–0437–CW, 2014 WL 5812294, at *6 (N.D.Cal. Nov. 7, 2014) ("[T]he monthly [billing] statements could induce merchants to continue using Mercury's

services, and hence could be considered commercial speech designed to propose a continued business relationship."). Defendants' motion to dismiss the complaint as to statements made in connection with the "Safe Rides Fee" is therefore denied.

(5) Proximate cause of damage.

Defendants argue that Plaintiff has not adequately alleged that the misrepresentations proximately caused its injury. [Doc. No. 12-1 at 31-32.]

A plaintiff may invoke a presumption of injury in false comparative advertising cases, i.e., where a defendant compares its product to a competing product. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 n.8 (9th Cir. 1989) (explaining the presumption that plaintiff's goodwill has suffered significant damages is justified in cases of direct comparative advertising). In cases of false comparative advertising it is reasonable to presume that every dollar defendant makes has come "directly out of plaintiff's pocket." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011). Conversely, "[w]hen advertising does not directly compare defendant's and plaintiff's products, when numerous competitors participate in a market, or when the products are aimed at different market segments, injury to a particular competitor may be a small fraction of the defendant's sales, profits, or advertising expenses." *Harper House*, 889 F.2d at 209 n.8. To recover damages in a false non-comparative advertising case, "actual evidence of some injury resulting from the deception is an essential element of the plaintiff's case." *Id*. at 210 (emphasis in original).

In this case, Plaintiff and Uber are direct competitors who provide San Diego transportation services. Compl. ¶¶28-29. Plaintiff alleges that Uber regularly inflated its driver screening and safety efforts in direct comparison to competitors in the taxi industry to cause customers to use Uber instead of Plaintiff and other taxis. Compl. ¶54. As a direct result, customers were induced to choose Uber's products and services over Plaintiff's and the taxi industry's products and services. *Id.* The Complaint alleges Uber made misstatements that convince customers Uber's ride is safer than Plaintiff's taxis, causing Plaintiff lost revenue, decreased profits, and substantial reputational harm. See

13

Compl. ¶¶3, 6, 30-36, 51-55, Prayer for Relief (¶¶B & C). Thus, Plaintiff's "allegations of reputational harm and lost sales proximately caused by [Uber's] false statements are sufficient at the pleading stage." *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-CV-00253, 2016 WL 6393503, at *6 (N.D. Cal. Oct. 28, 2016). Therefore, the motion to dismiss on this ground is denied.

              (6)    Injunctive Relief.

Defendants argue that Plaintiff lacks Article III standing to seek injunctive relief because all of the alleged misrepresentations occurred prior to May 2016; thus Plaintiff does not allege a "real or immediate threat" that it will be wronged again. [Doc. No. 12-1 at 32-33 (citations omitted).]

However, the Court's power to grant injunctive relief survives the discontinuance of the illegal conduct. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir.1992). Here, Plaintiff alleges Uber's misinformation campaign lasted "[f]or years," including its "Safe Rides Fee" that persisted for "multiple years," constituting a "continuing practice." Compl. ¶3. The Complaint describes Uber's limited screening efforts and background checks in the present tense, indicating they have not changed. *See* Compl. ¶¶42-43. Similarly, the Complaint alleges (in present tense) Uber touts that it "go[es] above and beyond local requirements in every city [it] operate[s]." Compl. ¶39. Finally, the Complaint alleges that Uber has engaged in a continuing practice of misstating its safety measures compared to taxis, has done so for years, and has not changed its measures. Compl. ¶¶ 50-54. Thus, Plaintiff has sufficiently alleged facts to warrant injunctive relief. Therefore, the motion to dismiss on this ground is denied.

/ / / / /

/ / / / /

(7) Class treatment.

Defendants move to strike Plaintiffs' class allegations pursuant to Federal Rule of Civil Procedure 12(f). Under Rule 12(f), the "court may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." However, Rule 12(f) is not the proper procedural vehicle for challenging class claims. *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2014 WL 1048710 at *3-4 (N.D. Cal. March 14, 2014) (concluding that Rule 12(f) is not the proper procedural vehicle for challenging class claims). Therefore the motion to strike the class claims is denied.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is granted to the extent the Lanham Act claim is based on protected speech in the media, but otherwise is denied. The motion to strike is also denied. Finally, Defendants' request for oral argument [Doc. No. 12-5] is denied.

Defendants shall **answer** the Complaint (as modified by this order) by **May 5, 2017**.

**IT IS SO ORDERED**.

Dated: April 13, 2017

Hon. Cathy Ann Bencivengo
United States District Judge